Joseph E. BIRRELL, Plaintiff–Appellee,

v.

Robert BROWN, Director, Michigan
Dept. of Corrections, et al.,
Defendants–Appellants.

No. 87–1371.

United States Court of Appeals,
Sixth Circuit.

Argued May 12, 1988.

Decided Feb. 13, 1989.

Susan A. Harris (argued), Asst. Atty.
Gen., Lansing, Mich., for defendants-appellants.

Paul Robinson (argued), Jaffe, Synder,
Raitt & Heuer, Detroit, Mich., for plaintiff-appellee.

Before WELLFORD, BOGGS, and
NORRIS, Circuit Judges.

WELLFORD, Circuit Judge.

This interlocutory appeal arises out of an ongoing civil rights action challenging the plaintiff's conditions of confinement in a Michigan state prison. The sole issue for our consideration is whether it was error to deny the defendants' motion for summary judgment based on qualified immunity as prison officials.[1]

Plaintiff sued Robert Brown, the director of the Michigan Department of Corrections, E. Baylor, superintendent of the facility in controversy, and the Michigan Department of Corrections. We are concerned here with the constitutional claims raised relating to eighth amendment violations, but plaintiff also asserts that the defendants violated Michigan Department of Correction policy regulations in a number of aspects.

---

1. Appellant urges in this appeal several points which are unrelated to the question of qualified immunity. At this point in the proceedings, the only question ripe for consideration is the qualified immunity issue raised by individual defendants in motions for summary judgment. *See, e.g., Huron Valley Hospital, Inc. v. City of Pontiac,* 792 F.2d 563 (6th Cir.), *cert. denied sub nom. Walker v. Huron Valley Hospital, Inc.,* 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986).

We must address a jurisdictional problem in respect to this appeal, although this matter was not mentioned by either party. The notice of appeal was filed beyond the thirty-day period under Fed.R. App.P. 4(a)(1). The district court permitted an enlargement of time, however, for defendants to file a motion for reconsideration of its order, and this may be considered to toll the appeals period. Fed.R. App.P. 4(a)(4). We conclude that defendants' reliance on this action by the district court excuses the failure to file a notice of appeal in a timely fashion, but we concede that the question is not free from doubt. See *Higginson v. United States*, 384 F.2d 504, 511 (6th Cir.1967) (Peck, J., concurring), *cert. denied*, 390 U.S. 947, 88 S.Ct. 1034, 19 L.Ed.2d 1137 (1968).

Mr. Birrell has sued the Department and several prison officials because he contends that conditions at Michigan's Western Wayne Correctional Facility are so offensive that they violate the eighth amendment prohibition against cruel and unusual punishment. There is no dispute that the Michigan prison system, like many other prison systems in this country, is overcrowded and underfunded. Prisons are simply not high on the "pecking order" for use of tax revenues. The record shows that in 1985 the state purchased an old prison in an attempt to handle the growing prison population in Michigan. The property purchased was originally built by the city of Detroit in 1927, and was known as the Detroit House of Corrections or "DeHoCo." It was also known to be in poor condition: a statement issued by the Department of Corrections in 1985 shows the state made some changes in lighting and fire prevention systems to bring the facility up to *minimum* health and safety standards. Following its opening, however, the Michigan Department of Corrections program called for preexistent buildings to be extensively renovated or demolished and replaced with new buildings at the prison now known as Western Wayne Correctional Facility (Western Wayne). On November 11, 1985, plaintiff was transferred to Western Wayne before any of the planned improvements had been instituted.

The complaint pictures a facility that is in serious need of repair. Birrell has made a number of allegations which assert that Western Wayne is both an unsanitary and a dangerous place to live as a prisoner. Some of Birrell's specific contentions are that the buildings are a fire and asbestos hazard and that inadequate fire safety facilities exist; that the roof of the dining hall leaks and water often falls on the prisoners as they eat; that only one shower is provided to serve the needs of forty-five prisoners in his unit; that lighting is poor and electrical lines do not meet code requirements; that there is denial of access to legal materials and to the courts; that insects and other vermin are prevalent; and that dangerous conditions (stabbings and violence) exist due to inadequate staffing. Defendants do not deny all these allegations. The plaintiff has alleged that these conditions and others constitute an inhumane and unconstitutional environment, and he has asked for both injunctive and monetary relief. The defendants answered these charges by asserting that the conditions were not as bad as stated by Birrell, and by insisting that conditions were improving and will continue to improve. The individual defendants moved for summary judgment based on qualified immunity, and also claimed as a matter of law that no eighth amendment violation exists.

Upon reference, the magistrate reviewed the plaintiff's allegations and reported in a twenty page recommendation that the defendants could not establish qualified immunity to insulate themselves under the circumstances. While recognizing the plaintiff had to point to *particular conditions* as violative of the eighth amendment, the magistrate concluded that the complaint was sufficiently particularized to survive defendants' motion for summary judgment and reported and recommended that more evidence of conditions in the prison be produced. The magistrate did recommend, however, dismissal of Michigan Department of Corrections as a defendant, and dismissal of the plaintiff's demand for injunctive relief because Birrell

was no longer a resident of Western Wayne. The magistrate's recommendations were adopted by the district court and this interlocutory appeal followed with respect to the immunity issue.

Resolution of this case requires us to decide whether a triable issue of fact relating to an eighth amendment violation exists based on the complaint and the showings of the parties. We must also determine whether the qualified immunity claim by the prison officials will frustrate any legitimate constitutional claims of the plaintiff and whether qualified immunity should be granted under the circumstances. We reverse the decision of the district court.

■ Dealing with claims of an eighth amendment violation in the prison context is not easy because of the necessarily vague standards generally utilized to judge prison conditions. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), establishes that prison conditions falling below a certain level of decency can violate the Constitution. Although no inflexible standard in this regard may be set, the Court stated that conditions which fall below our "evolving standards of decency" will be considered cruel and unusual for purposes of the eighth amendment. *Id.* at 346, 101 S.Ct. at 2398. Our circuit requires evidence of at least one specific condition to prove a violation of the eighth amendment; a general allegation of indecent general circumstances usually is not sufficient. *Walker v. Mintzes,* 771 F.2d 920, 925 (6th Cir.1985).

In addition to producing evidence of seriously inadequate and indecent surroundings, a plaintiff must also establish that the conditions are the result of recklessness by prison officials and not mere negligence or oversight:

> It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Any court passing judgment on prison conditions must be tempered by the recognition that prison officials are in the best position to operate the prison or penal system being challenged. *Rhodes,* 452 U.S. at 351, 101 S.Ct. at 2401. The Supreme Court has also indicated that a professional, sued in his individual capacity, will not be liable for damages if he was unable to satisfy his normal professional standards because of budgetary constraints. "[I]n such a situation" stated the Court, "good-faith immunity would bar liability." *Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982).

■ Because we believe that both defendants are protected by qualified immunity, we will not discuss the eighth amendment aspects of this case. A prison official's motion for summary judgment based on qualified immunity should be denied only when he acts intentionally, or when his alleged actions violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ramirez v. Webb,* 835 F.2d 1153 (6th Cir.1987). In order to be "clearly established," the particular circumstances of a case need not to have been previously held illegal; instead, precedent must be clear enough to put a reasonable official on notice that his actions are illegal or unconstitutional. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Ramirez,* 835 F.2d at 1156.

There is currently a split of authority over the question, but some courts have held that because an eighth amendment violation requires recklessness or intent, good faith immunity automatically drops from the case once a violation is deemed provable. *See, e.g., Albers v. Whitley,* 743 F.2d 1372, 1376 (9th Cir.1984), *reversed on other grounds, sub nom. Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed. 2d 251 (1986); *Miller v. Solem,* 728 F.2d 1020, 1024–25 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984). Other cases, however, have gone

on to consider the immunity issue despite allegations of unconstitutional conditions. *Sampson v. King,* 693 F.2d 566, 569–70 (5th Cir.1982); *McCray v. Burrell,* 516 F.2d 357, 369–71 (4th Cir.1975) (en banc), *cert. dismissed,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976). The Supreme Court declined to rule on the question in *Whitley v. Albers,* 475 U.S. 312, 327–28, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). In *Youngberg,* however, the Court indicated that budgetary constraints could cloak an individual with good-faith immunity. 457 U.S. at 323, 102 S.Ct. at 2462. Such immunity based on budgetary constraints does not, of course, excuse the constitutional violations themselves, or prevent court orders that require the government to correct deficiencies. *Williams v. Edwards,* 547 F.2d 1206 (5th Cir.1977).

Brown is sued as director of the state prison system; Baylor as superintendent of the Wayne facility. Birrell asserts, among other things, that "the entire institution is understaffed." It is hard to see how Baylor could be responsible for this alleged deficiency unless he refused staff or failed to request sufficient staff knowing of serious understaffing that would bring about violation of a known constitutional right.[2] Brown, on the other hand, might somehow be directly responsible for the alleged understaffing, but only if he was not hampered by budgetary constraints. Birrell alleges particular shortcomings and deficiencies, but provides no support for the proposition that these deficiencies are due to deliberate indifference on the part of either Baylor or Brown.

Deputy Director Bolden's affidavit indicates that "it was clear that such standard renovations were required at Western Wayne in order to satisfy normal professional standards, [and] it was imperative that prisoners be housed there before all construction was complete, ... [because] the Department has been subject to court orders which have effectively limited the number of prisoners who may be housed in the major facilities." Bolden points out the

obvious in respect to the assertion of qualified immunity: "the Department has no authority to reject any prisoners committed to its custody by the circuit courts of this State."

We have reviewed the record in this case carefully. It seems clear that due to overcrowding in other Michigan prison facilities it was determined at the policymaking level of the Michigan Department of Corrections that short or medium term prisoners would have to be housed at Western Wayne before desired and planned renovations could be accomplished. We find no reasonable basis for a determination that defendant Baylor was a part of this decision nor personally responsible for shortcomings, problems and deficiencies at Western Wayne when Birrell was housed there. We find no basis for finding that he intentionally brought about or was responsible for any specific claim of constitutional violation attributable to his intentional acts. To be held liable for Birrell's claim for damages, Baylor must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of the parties offending to be held liable. *Hays v. Jefferson County, Kentucky,* 668 F.2d 869, 874 (6th Cir.1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). See also *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir. 1984), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1985). We conclude that Baylor's motion for summary judgment based on qualified immunity should have been granted because no specific allegation about deficiencies at Western Wayne due to his responsible actions, or inaction, is sufficient to set out a constitutional violation, known to Baylor, which he had the means or authority to prevent.

Similarly, Birrell has failed to allege that Brown did anything other than the best he could with the money provided by the legislature. It appears that Brown was confronted with a situation over which he could not exercise as much control as might be desired due to a lack of funds. It

---

**2.** Deputy Director Bolden's affidavit indicates that during fiscal year 1985 no funds were appropriated for staff and programs at Western

Wayne Correctional facility. Those expenses were paid from the department's housing funds.

therefore appears that Brown is entitled to qualified immunity under the *Youngberg* standard and that his motion for summary judgment should have been granted.

Accordingly, we reverse the decision of the district court.